UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

BRONSON NAHALE BASCAR,

                Plaintiff,

    vs.

STATE OF HAWAII, PUBLIC SAFETY
DEPT., LT. GAIL MERCIVICH,

                Defendants.

CIV. NO. 19-00584 LEK-KJM

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court are: pro se Plaintiff Bronson Nahale Bascar's ("Plaintiff") Motion for Summary Judgment ("Plaintiff's Motion"), filed on May 21, 2020; and Defendants State of Hawai`i Department of Public Safety ("DPS") and Lieutenant Gail Mirkovich's ("Mirkovich" and collectively "Defendants") Motion for Summary Judgment ("Defendants' Motion"), filed on November 30, 2020. [Dkt. nos. 26, 39.] Defendants filed their memorandum in opposition to Plaintiff's Motion on July 20, 2020, and Plaintiff filed his reply in support of his motion on July 30, 2020. [Dkt. nos. 31, 32.] Pursuant to an October 23, 2020 entering order, on November 4, 2020, Defendants filed a supplement to their memorandum in opposition to Plaintiff's Motion. [Dkt. nos. 37, 38.] Plaintiff filed his memorandum in opposition to Defendants' Motion on December 14, 2020. [Dkt.

no. 44.]  The Court finds these matters suitable for disposition
without a hearing pursuant to Rule LR7.1(c) of the Local Rules
of Practice for the United States District Court for the
District of Hawaii ("Local Rules").

On January 28, 2021, an entering order was issued
informing the parties of this Court's rulings on the motions.
[Dkt. no. 46.]  The instant Order supersedes that entering
order.  For the reasons set forth below, Plaintiff's Motion is
denied, and Defendants' Motion is granted.  Defendants are
entitled to summary judgment in their favor as to all of
Plaintiff's remaining claims in this case.

<u>BACKGROUND</u>

On October 25, 2019, Plaintiff, who was incarcerated
at the Halawa Correctional Facility ("HCF") at the time,[1] filed
his Prisoner Civil Rights Complaint ("Complaint"), arising from
events that occurred while he was being held at Maui Community
Correctional Center ("MCCC") as a pretrial detainee.  [Dkt.
no. 1.]

Counts I and II of the Complaint allege claims under
42 U.S.C. § 1983 based on violations of Plaintiff's Fourteenth
Amendment rights, which he asserts relate to MCCC disciplinary

---

[1] Plaintiff is currently incarcerated at Saguaro
Correctional Center.  [Pltf.'s notice of transfer & change of
mailing address, filed 8/24/20 (dkt. no. 36).]

proceedings and the resulting sanction.  Plaintiff states that,
on April 22, 2019, Mirkovich,[2] acting as a DPS disciplinary
hearing officer, found him guilty of a misconduct violation as a
result of property damage at MCCC.  Plaintiff was charged $2,716
for the damage, and the amount was to be deducted from his
suspended trust account.  Plaintiff alleges the cost of the
damage at MCCC was split equally among prisoners housed in
Modules A and B.  However, according to Plaintiff, Module A,
where he was housed, had much less damage than Module B had.
Plaintiff complains that he was charged the same amount as
inmates in Module B, although he could not have caused the same
amount of property damage, and he was not shown any proof of the
amount of property damage that Module A sustained.  [Complaint
at pgs. 5-6.]  Count III asserts a § 1983 claim for violation of
Plaintiff's Fourteenth Amendment rights, arising from an
incident of alleged retaliation on March 11, 2019.  [Id. at
pg. 7.]  The Request for Relief section of the Complaint states,
in pertinent part: "I would like to adjust the Restitution
[sic], be allowed to shown [repaid] damages I was responsible
for, or have a trial being I was pretrial."  [Id. at pg. 8.]

_____

[2] Mirkovich is erroneously identified in the Complaint as
"Lt. Mercivich - Gail Mercivich."  See Complaint at ¶ A.4;
Defs.' answer to Pltf.'s Complaint ("Answer"), filed 1/24/20
(dkt. no. 21), at pg. 2.

In a screening order, this Court concluded that
Counts I and II stated a claim against Defendants, but that
Count III failed to state a colorable claim for relief.  [Order
Dismissing Complaint in Part and Directing Service, filed
11/22/19 (dkt. no. 6) ("11/22/19 Order"), at 5, 7.]  Count III
was dismissed with leave to amend,[3] and service was ordered as to
Counts I and II.  [Id. at 7.]

## I.   Plaintiff's Motion

In his motion, Plaintiff restates the facts alleged in
the Complaint, and he cites case law, which he argues supports
his position that the disciplinary charge of $2,716 constituted
a taking without due process, in violation of his Fourteenth
Amendment rights.  [Pltf.'s Motion at 1-2.]  He states the
charge prevents him from being able to purchase items from the
commissary, constituting an additional punishment that is cruel
and unusual.  He also states that it will prevent him from
buying items that he needs for employment, once he is allowed to
participate in the work furlough program.  [Id. at 1.]  Further,
Plaintiff contends he was denied due process because: "[t]here
was . . . no restitution hearing with evidence supporting the

---

[3] Plaintiff was granted leave to amend Count III by
December 20, 2019.  [11/22/19 Order at 7.]  Plaintiff did not
file an amended complaint by the deadline, nor did he request an
extension of the deadline.  Count III therefore is no longer
part of this case.

amount required for restitution & value of property"; and the restitution payments "are charged to [his] personal account[, n]ot the restitutional area."  [Id. at 2 (citations omitted).]

## II.  **Defendant's Motion**

Defendants present evidence that, on March 11, 2019, a riot occurred at MCCC, and Modules A and B sustained significant damage as a result of the riot and the fire started during the riot.  At the time of the riot, Plaintiff was housed in Module A as a pretrial detainee.  Plaintiff and several other inmates were charged with misconduct because of their respective roles in the riot.  [Defs.' concise statement of facts in supp. of Defs.' Motion ("Defs.' CSOF"), filed 11/30/20 (dkt. no. 40), Decl. of Gail Mirkovich ("Mirkovich Decl.") at ¶¶ 4-6.[4]]  An Adjustment Committee met to consider the charges against Plaintiff, and Mirkovich was the chairperson of that committee. Id. at ¶ 4; see also id., Exh. A (DPS Notice of Report of Misconduct and Hearing).[5]  Plaintiff was charged with:

> 6(6)    Setting a fire.
>
> 6(7)    Destroying, altering or damaging government property or the property of

---

[4] Mirkovich works at MCCC and is a DPS Adult Corrections Officer V.  [Mirkovich Decl. at ¶ 1.]

[5] The notice section of the document was prepared on March 19, 2018, and Plaintiff signed the document on March 25, 2019, acknowledging receipt of the notice.  The disposition section was signed by Mirkovich on April 22, 2019.  [Mirkovich Decl., Exh. A.]

another person resulting in damage of
$1,000 or more, or damage to
irreplaceable documents.

6(11)     Rioting

6(12)     Encouraging others to riot.

6(13)     The use of force or violence resulting
          in the obstruction, hindrance, or
          impairment of the performance of a
          correctional function by a public
          servant, which requires facts related
          to the conduct and does not require
          that the conduct was a intentional act.

6(14)     Possession, tampering, compromising or
          manufacturing of any security equipment
          or locking mechanism, such as, but not
          limited, to handcuffs, handcuff keys,
          or any too designed to lock or unlock
          any type of locking mechanism.

[Mirkovich Decl., Exh. A (Defs.' emphasis omitted).]  The notice

stated a hearing would be held at HCF on March 28, 2019

("Adjustment Hearing").  [Id.]

        Plaintiff pled guilty to some of the charges, and he

pled not guilty to the other charges.  As to the charges to

which he pled not guilty, the Adjustment Committee found him

guilty based on the evidence.  [Id.; Mirkovich Decl. at ¶ 9.]  A

total of twenty MCCC inmates in Modules A and B were found

guilty of causing property damage related to the riot.

[Mirkovich Decl. at ¶ 10.]  The Adjustment Committee determined

that Plaintiff should be required to pay restitution because of

his role in the riot, but the committee did not determine the

6

amount of the restitution.  It was the MCCC administration and DPS that decided the twenty inmates who were found guilty of misconduct should share the total repair cost equally.  The $2,716 restitution amount assessed against Plaintiff was determined using that formula.  Id.; see also Mirkovich Decl., Exh. A ("RESTITUTION IN THE AMOUNT OT $2716.00 FURTHER RESTITUTION AMOUNTS WILL BE DETERMINED BY MCCC)" (capitalization in original) (Defs.' emphasis and annotations omitted)).  The disposition section also stated: "You have 14 days to grieve upon receipt of Disposition."  [Mirkovich Decl., Exh. A (Defs.' emphasis omitted).]  Mirkovich states there was no denial of a "restitutional hearing" as Plaintiff alleges because DPS does not provide hearings addressing only restitution.  The Adjustment Hearing that was held and the three-step grievance process, which Plaintiff also utilized, are the processes that are available to all inmates to address similar issues. [Mirkovich Decl. at ¶ 12.]

Plaintiff submitted a DPS Administrative Remedy Form, dated May 31, 2019, at HCF to appeal the imposition of restitution.  The form stated that he attempted an informal resolution with the grievance office on May 6, 2019.  [Defs.'

CSOF, Decl. of Shari Kimoto ("Kimoto Decl."), Exh. B.[6]]  In his

appeal: Plaintiff identified specific property damage caused

during the riot that he alleged he was not responsible for;

Plaintiff asserted MCCC did not take his evidence into

consideration; Plaintiff contested the fact that the inmates who

were found guilty were assessed the same restitution amount,

regardless of whether they were in Module A or Module B; and

Plaintiff argued a court order was required to impose a

restitution order against him as a pretrial detainee.  Plaintiff

therefore argued the imposition of restitution violated his due

process rights, his right to be free from cruel and unusual

punishment, and his right to be presumed innocent until proven

guilty in a court of law.  [Id.]

        Ms. Kimoto signed the Resolution section of the form

on July 11, 2019.  [Id.; Kimoto Decl. at ¶ 3.]  It states:

> The following is in response to your step II
> grievance appeal.  PSD Policy COR 13.03 states
> that formal rules of evidence shall not apply.
> The charge is supported by a preponderance of
> evidence, which should not be confused with the
> criminal trial standard of beyond a reasonable
> doubt.  The Adjustment Hearings Officer may rely
> on any form of evidence, documents, testimonies
> and inmate/staff reports, which it believes is
> reliable.  You were afforded an opportunity to
> appear at your misconduct hearing, respond to
> your misconduct, explain what happened, and

_____

[6] Shari Kimoto is the DPS Corrections Program Division
Administrator.  During the events at issue in in this case, she
was the DPS Acting Institutions Division Administrator.  [Kimoto
Decl. at ¶ 1.]

provide any additional information to support
your story.  Your guilty finding was based on
staff reports.  Your misconduct stands.  Your
grievance is denied.

In accordance with P&P COR.12.03.10.6, this
decision is final and the ultimate recourse
available within the administrative remedy
process.

[Kimoto Decl., Exh. B (Defs.' emphasis omitted).]

     After the filing of this action, MCCC responded to

Plaintiff's request to verify the $2,716.00 restitution amount

charged against him and to his argument that the damages to

Module A were not as extensive as the damages to Module B.

[Defs.' CSOF, Decl. of Deborah Taylor ("Taylor Decl."), Exh. C

(letter dated 2/10/20 to Plaintiff from Deborah Taylor ("2/10/20

Letter")).[7]  Plaintiff was informed that, after the imposition

of the $2,716.00 amount, MCCC was able to determine the cost of

the repairs attributable to only Module A - $19,785.65.  [Id.]

The misconduct hearings identified three inmates, including

Plaintiff, who were found to have participated in the

"disturbance in Module A" and who were ordered to pay

restitution to MCCC.  [Id.]  Plaintiff's restitution amount, and

that of the other two inmates, was revised from $2,7610.00 to

$6,595.20.  [Id.]

_____

     [7] Deborah Taylor has been the Warden at MCCC since August
2018.  [Taylor Decl. at ¶ 1.]

Warden Taylor sent Plaintiff another letter, dated May 12, 2020 ("5/12/20 Letter"), noting that Plaintiff had not responded to the 2/10/20 Letter. [Taylor Decl., Exh. D (5/12/20 Letter).] The 5/12/20 Letter reiterated the information regarding the increase in the restitution amount. Warden Taylor also stated Plaintiff could write to her to request the documentation which supported the revised $6,595.00 restitution amount. [Id.] She stated: "If you fail to respond by May 25, 2020, PSD will assume that you agree that you owe $6,595.00 and do not need to see the supporting documentation." [Id.] Warden Taylor did not receive any request from Plaintiff to see the documentation. [Taylor Decl. at ¶ 5.]

Plaintiff states he witnessed the events at the riot, and more than three people in Module A were involved. He does not dispute that only three were found guilty. [Mem. in opp. to Defs.' Motion at 1.] Plaintiff argues splitting the repair costs among the three inmates without evidence of who caused what specific property damage, including whether any damage was caused by the inmates who were found not guilty, violates his right to due process. [Id. at 1-2.] Plaintiff states he "didn't damage allot [sic] of the thing that were broken & damaged." [Id. at 2.] Plaintiff argues he should not have been found guilty of setting a fire because he "had nothing to do with setting fire damaging locks, ect. [sic]," and he argues

10

that he was not shown evidence at the Adjustment Hearing.  [Id.]
Further, Plaintiff argues that, at the adjustment hearing, there
was no evidence supporting the $2,716 amount imposed.  [Id. at
3.]  As to the twenty inmates, including himself, who were
assessed $2,716, Plaintiff alleges none was "given a
restitutional hearing."  [Id.]  Plaintiff argues that, when MCCC
increased his restitution amount to $6,595.20, it still did not
provide him with documentation supporting the amount.  He argues
he should not have been required to respond to the 5/12/20
Letter to obtain the documentation because it was obvious that
he wanted to obtain the documentation.  Plaintiff argues the law
requires that he be given a hearing where DPS must establish the
specific amount of damages that he was responsible for.  [Id. at
4-5.]

## DISCUSSION

### I.   Preliminary Issues

Counts I and II both allege claims pursuant to § 1983,
which states, in pertinent part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State . . . subjects, or causes to be subjected,
> any citizen of the United States or other person
> within the jurisdiction thereof to the
> deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action
> at law, suit in equity, or other proper
> proceeding for redress . . . .

This district court has recognized that "states and state agencies are not 'persons' subject to suit for money damages under § 1983." Lauro v. Hawai`i, CIV. NO. 19-00633 JAO-KJM, 2020 WL 608276, at *5 (D. Hawai`i Feb. 7, 2020) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 65, 71 (1989)), *appeal dismissed*, No. 20-15480, 2020 WL 5544324 (9th Cir. July 6, 2020).  Further, "[t]he Eleventh Amendment bars suit in federal court against a state or state agencies absent a valid abrogation of immunity by Congress or an express waiver of immunity by the State." Id. (citing Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 267-268 (1997); Edelman v. Jordan, 415 U.S. 651, 653 (1974); Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993)).[8]

     A state official sued in his individual capacity is a "person" for purposes of § 1983.  Hafer v. Melo, 502 U.S. 21, 23 (1991).  A state official sued in his official capacity is only considered a "person" for purposes of a "suit under § 1983 only 'for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law.'" Lauro, 2020 WL 608276, at *5 (some citations omitted) (quoting Wilbur v. Locke, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on*

---

     [8] Edelman has been overruled on other grounds by Will, 491 U.S. 58.  See, e.g., Soderstrom v. Ocampo, Case No. SACV 19-422 JVS(KESx), 2019 WL 8014552, at *10 (C.D. Cal. June 17, 2019).

*other grounds by* <u>Levin v. Commerce Energy, Inc.</u>, 560 U.S. 413 (2010)).  Further, the Eleventh Amendment does not preclude a suit for damages against a state official sued in his individual capacity, <u>Hafer</u>, 502 U.S. at 30-31, and it does not preclude a suit for prospective declaratory and injunctive against a state official sued in his official capacity, <u>Doe v. Regents of the Univ. of Cal.</u>, 891 F.3d 1147, 1153 (9th Cir. 2018).

Although the pleading form allowed Plaintiff to specify whether Mirkovich was being sued in her individual capacity, her official capacity, or both, Plaintiff did not check either option.  [Complaint at pg. 2.]  Because he is pleading pro se, Plaintiff's pleadings must be liberally construed.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam).  The Complaint is therefore liberally construed as asserting claims against Mirkovich in her individual capacity and her official capacity.

Although Defendants asserted Eleventh Amendment immunity as a defense in their Answer, [Answer at 3, THIRD DEFENSE,] neither Defendants memorandum in opposition to Plaintiff's Motion nor Defendants' Motion raises an Eleventh Amendment argument.  However, because Defendants are entitled to summary judgment on other grounds, it is not necessary for this Court to address whether Defendants have waived their Eleventh

Amendment immunity in this case.  The Court now turns to the merits of Plaintiff's claims.

## II.  **Plaintiff's Claims**

This Court has construed Counts I and II as alleging that the imposition of restitution for property damage caused during the MCCC riot violated Plaintiff's Fourteenth Amendment due process rights.  [11/22/19 Order at 4-5.]  This Court has construed Plaintiff's prayer for relief to include a request for "an accurate accounting of the amount of damages that he is personally responsible for in Module A," and a request for "restitution if more than that amount has been deducted from his account."  [Id. at 5.]  These constitute requests for prospective injunctive relief.

### A.   **Post-Filing Facts**

After the filing of this action, MCCC changed Plaintiff's restitution amount to reflect only property damage caused to Module A, and it offered him the opportunity to review the documentation supporting the new amount.  See Taylor Decl., Exh. C (2/10/20 Letter), Exh. D (5/12/20 Letter).  Plaintiff did not actually review the documentation because he did not submit a written request, as the 5/12/20 Letter directed him to do. See Taylor Decl. at ¶ 5.  Plaintiff argues he should not have been required to submit a written request because his disagreement with the amount and his desire to review the

14

receipts are obvious.  He also appears to argue the restitution
amount was raised in retaliation for his grievance and lawsuit
contesting the original restitution amount.  [Mem. in opp. to
Defs.' Motion at 4.]  However, Plaintiff never sought leave to
file an amended complaint: to amend his due process claims to
challenge the increase in the restitution amount and the
requirement that he submit a written request to review the
documentation of the increased amount; or to assert a new
retaliation claim.

          Because Plaintiff never amended his substantive claims
in this case, the requests for prospective injunctive relief in
the form of limiting the restitution imposed to property damage
in Module A and in the form of an accounting remain requests for
relief related to Plaintiff's claims arising from his Adjustment
Hearing and the result thereof.  Those requests for relief are
now moot because Plaintiff has already obtained, or at least had
access to, the relief he sought.  See, e.g., Palafox-Lugo v.
Lombardo, 768 F. App'x 697, 698 (9th Cir. 2019) ("Because he has
already obtained the relief he seeks, his claim is moot."
(citing Abdala v. INS, 488 F.3d 1061, 1065 (9th Cir. 2007)
(habeas petition moot where petitioner's release and deportation
"cur[ed] his complaints" about the length of his detention))).
Plaintiff's requests for prospective injunctive relief in the
form of limiting the restitution imposed to property damage in

15

Module A and in the form of an accounting must be dismissed. Cf. MetroPCS Cal., LLC v. Picker, 970 F.3d 1106, 1115-16 (9th Cir. 2020) ("Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." (citation and internal quotation marks omitted)).

Thus, Plaintiff's claims in this case are limited to the alleged due process violations related to the March 28, 2019 Adjustment Hearing, without regard to the effects of the 2/10/20 Letter and the 5/12/20 Letter.

**B.    Claims Related to the Adjustment Hearing**

This Court previously noted that Plaintiff "clearly has a protectable property interest in the funds in his prison trust account and had a right to a pre-deprivation hearing." [11/22/19 Order at 5 (citing Shinault v. Hawks, 782 F.3d 1053, 1057 (9th Cir. 2015)).]   Although that observation was made at the screening stage, none of the evidence that has been presented in connection with the instant motions requires a different result.   This Court therefore also concludes, for purposes of the instant motions, that Plaintiff has a protectable property interest in his trust account funds and that he is entitled to a pre-deprivation hearing.

In Shinault, the Ninth Circuit stated:

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990). Due process protections extend only to deprivations of protected interests. See Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569–70, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).

. . . .

Once a protected interest is found, we employ the three-part balancing test of Mathews v. Eldridge, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), to determine whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation. Brewster v. Bd. of Educ., 149 F.3d 971, 983–84 (9th Cir. 1998). The Mathews test balances three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional safeguards; and (3) the government's interest, including the burdens of additional procedural requirements. Mathews, 424 U.S. at 335, 96 S. Ct. 893.

Recalling that due process varies depending on the particularities of a case, every action affecting an inmate trust account does not necessarily implicate a substantial private interest under the first Mathews prong. Here, however, Shinault's interest was clearly substantial, because [the Oregon Department of Corrections] deprived him of access to a significant amount of his funds. See Quick [v. Jones], 754 F.2d [1521,] 1522–23 [(9th Cir. 1985)] ($66 charge merits pre-deprivation process); cf. Sickles v. Campbell Cnty., Ky., 501 F.3d 726, 730 (6th Cir. 2007) (withdrawals of $110 and $20 do not implicate substantial private interest).

782 F.3d at 1057.

As to the first Mathews factor, a substantial private
interest was implicated because MCCC is depriving Plaintiff of a
significant amount of his funds.  The instant case focuses on
the tension between the second and third Mathews factors.
Plaintiff alleges the imposition of the same restitution amount
on all riot participants constitutes an erroneous deprivation of
his property, and he argues further hearings should have been
held to determine the specific property damage caused by each
inmate during the riot.  In contrast, from Defendants'
perspective, such additional procedures were not warranted and
would be unduly burdensome.

This Court has recently stated:

> Although prisoners may claim the protections
> of the Due Process Clause, the full panoply of
> rights due a defendant in criminal proceedings
> does not apply to prison disciplinary
> proceedings.  Wolff [v. McDonnell], 418 U.S.
> [539,] 556 [(1974)].[9]  "[T]here must be mutual
> accommodation between institutional needs and
> objectives and the provisions of the Constitution
> that are of general application."  Id.  The
> Supreme Court has concluded that when a prisoner
> faces disciplinary charges, prison officials must
> provide the prisoner with: (1) written notice of

---

[9] This Court emphasizes that the restitution order at issue
in this case was not imposed as part of the sentence for the
criminal charges that were pending against Plaintiff at the time
of the riot at MCCC.  Thus, in determining whether Plaintiff
committed misconduct during the riot and what the appropriate
sanctions were, Plaintiff was not entitled to "the full panoply
of rights due a defendant in" a criminal prosecution.  See
Wolff, 418 U.S. at 556.  Plaintiff's arguments to the contrary
are rejected.  See, e.g., Complaint at pg. 8 ("I would like to
. . . have a trial being I was pretrial.").

the claimed violation at least twenty-four hours
before the disciplinary hearing; (2) an
opportunity to present documentary evidence and
call witnesses "when permitting him to do so will
not be unduly hazardous to institutional safety
or correctional goals"; (3) the opportunity to
seek assistance where the charges are complex or
the inmate is illiterate; and (4) a written
statement by the factfinders as to the evidence
relied on and reasons for the disciplinary action
taken.  <u>Id.</u> at 563-70.

Regarding the opportunity to call witnesses,
although "[j]ail officials need not provide
inmates an unfettered right to call witnesses,
. . . they must make the decision whether to
allow witnesses on a case-by-case basis,
examining the potential hazards that may result
from calling a particular person." <u>Serrano v.
Francis</u>, 345 F.3d 1071, 1079 (9th Cir. 2003).
The prison officials must also eventually explain
why witnesses were not allowed to testify.  <u>Ponte
v. Real</u>, 471 U.S. 491, 497 (1985).

<u>Pitts v. Espinda</u>, CIV. NO. 20-00431 LEK-KJM, 2021 WL 217877, at

*6-7 (D. Hawai`i Jan. 21, 2021) (some alterations in <u>Pitts</u>).

Defendants have presented evidence that Plaintiff was

provided with notice of the disciplinary charges against him

more than twenty-four hours prior to the Adjustment Hearing.

<u>See</u> Mirkovich Decl., Exh. A (bearing Plaintiff's signature,

dated 3/25/19, on the notice stating the hearing was scheduled

for 3/28/19).  Plaintiff has not presented any contrary evidence

regarding the issues of whether and when he was provided with

notice of the Adjustment Hearing.  Thus, even viewing the record

19

in the light most favorable to Plaintiff,[10] there is no genuine
issue of material fact as to the first <u>Wolff</u> requirement.  <u>See</u>
Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment
if the movant shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter
of law.").

As to the second <u>Wolff</u> requirement, Defendants present
evidence that, in denying Plaintiff's appeal, Ms. Kimoto
observed that Plaintiff was "afforded an opportunity to appear
at [his] misconduct hearing, respond to [his] misconduct,
explain what happened, and provide any additional information to
support [his] story."  [Kimoto Decl., Exh. B.]  Further, the
grounds for Plaintiff's appeal indicate that Plaintiff's
position was that the Adjustment Committee did not consider,
*i.e.*, did not give weight to, his evidence; he did not argue
that he was prevented from presenting evidence.  <u>See</u> <u>id.</u>
Plaintiff has not identified any evidence in this case which
suggests that he was deprived of the opportunity to present
evidence at the Adjustment Hearing.  Even viewing the record in
the light most favorable to Plaintiff, there is no genuine issue
of material fact as to the second <u>Wolff</u> requirement.

---

[10] In considering Defendants' Motion, the record must be
viewed in the light most favorable to Plaintiff as the nonmoving
party.  <u>See</u> <u>Crowley v. Bannister</u>, 734 F.3d 967, 976 (9th Cir.
2013).

By acknowledging the receipt of the hearing notice, Plaintiff also acknowledged that he understood he could have counsel appear on his behalf at the Adjustment Hearing.  See Mirkovich Decl., Exh. A.  Plaintiff has not presented any evidence suggesting that he was denied the opportunity to seek legal assistance prior to the Adjustment Hearing.  Thus, even viewing the record in the light most favorable to Plaintiff, there is no genuine issue of material fact as to the third Wolff requirement.

As to the fourth Wolff requirement, Defendants have presented evidence that Mirkovich, on behalf of the Adjustment Committee, provided Plaintiff with written findings explaining that Plaintiff was found guilty on all charges of misconduct, "[b]ased on Reports and [his] plea," and setting forth the sanctions imposed.  [Mirkovich Decl. at ¶ 7 & Exh. A.] Plaintiff was notified that he had the right to utilize the grievance process to appeal the result, [Mirkovich Decl., Exh. A,] and he utilized that process.  In rejecting Plaintiff's appeal, Ms. Kimoto explained that an Adjustment Hearings Officer could rely on any evidence that the officer found reliable, and that the ultimate misconduct finding was based on staff reports. [Kimoto Decl., Exh. B.]  Plaintiff has not identified any evidence which suggests that he did not receive these written findings.  Thus, even viewing the record in the light most

favorable to Plaintiff, there is no genuine issue of material fact as to the fourth <u>Wolff</u> requirement.

Because all of the <u>Wolff</u> requirements were satisfied, this Court concludes that Plaintiff was provided with due process through the Adjustment Hearing and his subsequent appeal through the grievance process.  Although Plaintiff may have preferred to have a hearing in which findings were made as to what damage was specifically caused by him during the riot, his interest in such a proceeding is outweighed by the governmental interests.  Such a proceeding would have been unduly burdensome, insofar as it was not required by Plaintiff's Fourteenth Amendment due process rights.  This Court therefore finds that there are no genuine issues of material fact for trial, and that Defendants are entitled to judgment as a matter of law as to Counts I and II, because there was no violation of Plaintiff's right to due process.  Consequently, Plaintiff is not entitled to summary judgment in his favor.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment, filed May 21, 2020, is HEREBY DENIED, and Defendants' Motion for Summary Judgment, filed November 30, 2020, is HEREBY GRANTED.  Summary judgment is GRANTED in favor of Defendants as to the remaining claims in Plaintiff's Prisoner Civil Rights Complaint, filed October 25, 2019.  There being no

remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment in favor of Defendants and to close this case on **March 25, 2021,** unless Plaintiff files a timely motion for reconsideration of the instant Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 10, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**BRONSON NAHALE BASCAR VS. STATE OF HAWAII, ET AL; CV 19-00584 LEK-KJM; ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**